UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-81342-Dimitrouleas/McCabe

DEZDEMONA BARDHUSHI,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

### REPORT & RECOMMENDATION AFFIRMING SOCIAL SECURITY DECISION

**THIS CAUSE** comes before the Court on an Order of Referral from United States District Judge William Dimitrouleas (DE 5) to review a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Dezdemona Bardhushi for Disability Insurance Benefits (R. 15, 96). This matter presents two issues for review:

1. Whether the Administrative Law Judge ("ALJ") erred in formulating Plaintiff's residual functional capacity ("RFC"), specifically, by failing to properly assess the opinions of two orthopedic surgeons, by failing to account for Plaintiff's need for an assistive device, and by failing to assess the severity of Plaintiff's numerous impairments.

2. Whether substantial evidence supported the ALJ's assessment of Plaintiff's subjective complaints.

For the reasons set forth below, the undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

I.     BACKGROUND

On October 3, 2020, Plaintiff filed an application for disability benefits, with an alleged disability onset date of September 11, 2020 (R. 15).[1] After the application was denied at the lower levels, Plaintiff requested an administrative hearing, which took place via video conference on February 22, 2022 (R. 31-61). On March 10, 2022, the ALJ issued an unfavorable decision (R. 15-25).

The ALJ's decision followed the five-step process set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v). *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 852 (11th Cir. 2018) (explaining how the ALJ engages in the five-step process). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 11, 2020, the alleged onset date of disability (R. 16-17). At step two, the ALJ determined that Plaintiff had "severe" impairments of end-stage degenerative joint disease of right hip status, post right total hip arthroplasty, and degenerative disc disease of the lumbar spine (R. 17-20). The ALJ also determined that Plaintiff had "non-severe" impairments of adjustment disorder with depressed mood, growth hormone associated pituitary adenoma with acromegaly, secondary hyperparathyroidism, osteoporosis, history of degenerative joint disease, history of rheumatoid arthritis, and lumbar radiculopathy (R. 17-18).

Next, the ALJ found that Plaintiff's RFC allowed her to perform "medium work" as defined in 20 C.F.R. § 404.1567(c), "except that she can only frequently climb ramps and stairs, frequently climb ladders and scaffolds, frequently balance, and frequently stoop" (R. 20). At step four, the ALJ found that Plaintiff could still perform her past relevant work as an alterations tailor or fast-food cook as generally performed and as actually performed (R. 24-25). As a result, the ALJ found

---

[1] The record on appeal may be found at DE 13.

2

Plaintiff not disabled and did not proceed to step five (R. 25). Thereafter, the Social Security Appeals Council denied review (R. 1-3). This appeal followed pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (cleaned up). A reviewing court must regard the Commissioner's findings of fact as conclusive so long as they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence is … more than a scintilla … and it must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

A reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (cleaned up). So long as substantial evidence supports the Commissioner's decision, and the Commissioner followed proper legal standards, this Court must affirm, even if the Court would have reached a contrary result as finder of fact, and even if the Court finds that the evidence preponderates against the Commissioner's decision. *Winschel*, 631 F.3d at 1178.

## III. DISCUSSION

Plaintiff urges the Court to reverse the ALJ's decision for several reasons, each of which the Court will address in turn.

### A. RFC Determination

Plaintiff first argues the ALJ committed error in formulating Plaintiff's RFC, which represents the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Here, the ALJ found Plaintiff capable of performing "medium work" subject to

certain limitations (R. 20).  Plaintiff argues the ALJ's decision lacked substantial support in the record due to a series of errors made by the ALJ in her underlying analysis.  As set forth below, the Court finds no error after considering these arguments individually and in combination.  The Court will address each alleged error in turn.

    **1.  Dr. Andrew Noble, M.D.**

Plaintiff assigns error to the ALJ's evaluation of an opinion offered by Dr. Andrew Noble, the orthopedic surgeon who performed Plaintiff's right hip replacement (DE 20 at 11).  When evaluating disability claims, ALJs must "evaluate every medical opinion received and assign weight to each opinion."  *Robinson v. Acting Comm'r of Soc. Sec.*, 766 F. App'x 811, 814 (11th Cir. 2019); *see also* 20 C.F.R. § 404.1527c(b).  ALJs must evaluate medical opinions using the five factors set forth in 20 C.F.R. § 404.1520c(c).  The "most important" of the factors are "supportability" and "consistency."  20 C.F.R. § 404.1520c(b)(2).  As to these two factors, the regulations provide that ALJs "will explain" how they considered these factors.  *Id.*  ALJs may, "but are not required," to explain how they considered the remaining factors.  *Id.*

In this case, the evidence showed that Plaintiff underwent a right hip replacement surgery in March 2021 (R. 21).  Thereafter, on November 29, 2021, Dr. Noble signed a durable medical equipment ("DME") order form that noted, "[Plaintiff] needs adjustable cane *medically necessary*" (R. 633) (emphasis added).  The ALJ found Dr. Noble's medical-necessity opinion "unpersuasive," reasoning as follows:

> Dr. Noble's November 2021 medical opinion that use of a cane is medically necessary is found to be unpersuasive (Exhibit 12F).  Such medical opinion was given without any explanation.  Moreover, as Dr. Noble does not appear to have seen the claimant since her … largely unremarkable presentation in July 2021, there is generally no support for this medical opinion elsewhere in the medical evidence of record (Exhibit 1F.12, 13).  Dr. Noble's medical opinion is also inconsistent with the record as a whole given that … treatment notes from other providers dated from November and December 2021 showed no complaints of musculoskeletal issues

and reports of no gait difficulties and that the [Plaintiff] was walking for exercise (Exhibit 13F.2-3; 19F.5, 6).

(R. 23)

Plaintiff argues the ALJ's decision lacked substantial support in the record, that the ALJ should have given greater weight to Dr. Noble's opinion, and that the ALJ should have incorporated Plaintiff's need for an adjustable cane into the RFC (DE 20 at 13-15). The Court has reviewed the record evidence and finds no error in the ALJ's decision. The record evidence included the following:

- In February 2021, consultative examining physician Dr. Daniel Daria examined Plaintiff and opined that a hand-held assistive device was "not medically necessary" for Plaintiff to ambulate independently (R. 23, 630).

- Dr. Daria also noted that Plaintiff had "normal upper and lower extremities," that she could squat and rise from a chair using a table as support, that she could walk on her heels or toes, and that she needed no help to change into a medical garment for the exam (R. 468).

- In July 2021, Dr. Noble examined Plaintiff following her surgery and reported that Plaintiff was "overall doing well" (R. 305). Dr. Noble also reported that Plaintiff "ambulates with a normal stride" and used a cane only for "balance" (R. 305). He also prescribed Plaintiff a three-month supply of diclofenac to use on an as-needed basis as Plaintiff was planning to travel out of the country due to upcoming trip to Albania (R. 307).

- On July 28, 2021, state agency medical consultant Jolita Burns, M.D. likewise concluded, among other things, that Plaintiff "ambulated with normal stride"

5

- despite her rheumatoid arthritis, acromegaly, hip replacement, depression, and other conditions (R. 84-87, 92-95).

- As the ALJ also pointed out, Dr. Noble's opinion "was given without any explanation," as it consisted of a one-page DME order form, similar to a prescription (R. 23). As such, it failed to explain how Plaintiff's condition had deteriorated from her "largely unremarkable presentation in July 2021," to the point that she needed a cane to ambulate (R. 23).

- As the ALJ also pointed out, Plaintiff saw other providers in November and December of 2021, and none of them noted muscoskeletal issues or gait difficulties (R. 23). Specifically, on November 22, 2021, Plaintiff visited Devin Weidman, ARNP, of Rheumatology Associates, whose treatment notes indicated: "Exercise: yes, walking" (R. 858).

- Likewise, on December 2, 2021 and again on January 18, 2022, Plaintiff visited Dr. Nancy Thornton, a gynecologist, whose treatment notes showed no complaints of musculoskeletal issues or gait difficulties (R. 635-36).

The Court finds this evidence to be "substantial" within the meaning of the standard of review that applies here. To be sure, Plaintiff has pointed the Court to a variety of record evidence the ALJ might have used to reach different conclusions as to the weight assigned to Dr. Noble's opinion. On review, however, the role of this Court is not to reweigh conflicting evidence or substitute its judgment for that of the ALJ. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). The mere fact that some of the evidence conflicted with the ALJ's conclusion does not serve as a basis for remand. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) ("To the extent that [Plaintiff] points to other evidence which would undermine the ALJ's RFC

determination, [Plaintiff's] contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision."). The Court finds no error.

### 2. Dr. David Campbell

Plaintiff next argues that the ALJ erred in evaluating evidence from orthopedic surgeon Dr. David Campbell (DE 20 at 8-10). Specifically, Plaintiff had an initial visit with Dr. Campbell on February 7, 2022, at which time Dr. Campbell noted, among other things:

> *She is barely ambulatory due to weakness and sensory deficit in right leg*, and is a household ambulator with cane or walker only…. *She is permanently and totally disabled*…. She will worsen as the degenerative disease inevitably progresses with age.

(R. 853) (emphasis added). The ALJ addressed Dr. Campbell's opinion in the written decision, finding as follows:

> It is noted as an initial matter that a statement by David Campbell, M.D., in February 2022, that the claimant is permanently and totally disabled (Exhibit 18F.4), is inherently neither valuable nor persuasive for being a statement on an issue that is reserved to the Commissioner of Social Security (20 CFR 404.1520b(c)(3)(i)).

(R. 23). The ALJ included no further discussion of Dr. Campbell and did not address his view that Plaintiff was "barely ambulatory."

The Court finds the ALJ committed procedural error by failing to assign a weight and otherwise follow the requirements of 20 C.F.R. § 404.1520c(b)(2) with respect to Dr. Campbell's opinion concerning Plaintiff's status as "barely ambulatory."[2] The SSA regulations define "medical opinion" as follows:

---

[2] As an aside, Plaintiff concedes, and the Court agrees, that the ALJ acted properly by disregarding Dr. Campbell's opinion that Plaintiff was "permanently and totally disabled." As the ALJ noted, this opinion invaded the province of the Commissioner and, as such, the ALJ had no obligation to

7

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities:… Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching).

20 C.F.R. § 404.1513(a)(2)(i). In the Court's view, Dr. Campbell's statement that Plaintiff was "barely ambulatory" qualified as a medical opinion since it opined as to what Plaintiff could still do despite impairments, i.e., he opined she could barely ambulate.

The Court nevertheless finds the error to be harmless. When the ALJ fails to assign weight to a given medical opinion, a reviewing court may nevertheless affirm when, despite the error, the ALJ's rationale is clear. *See Garcia Travieso v. Berryhill*, No. 17-20021-CIV, 2018 WL 11346677, at *5 (S.D. Fla. Mar. 28, 2018) ("Even where an ALJ assigns no weight to a medical opinion, the error does not result in a reversal if the error is harmless…. The question becomes whether the ALJ provided a sufficiently clear analysis for this Court to review.").

In *Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016), for example, the ALJ failed to assign weight to a medical opinion concerning a claimant's mental limitations. Despite this error, the Eleventh Circuit affirmed, explaining as follows:

> We also affirm the ALJ's decision because we are not left pondering why the ALJ made the decision he made. This is not a case like *Winschel*, where the ALJ failed to provide enough information to know how he came to his decision. We do not ignore the rest of the opinion merely because of the ALJ's failure to assign weight as to [the medical opinion at issue]… The ALJ's discussion of [the] opinion is in depth and does not leave us wondering how the ALJ came to his decision. The ALJ's order demonstrates thoughtful consideration of the findings and supports the overall conclusion that [the claimant] is not disabled.

---

consider it pursuant to 20 CFR § 404.1520b(c)(3)(i) (R. 23).

*Id.* (cleaned up); *see also Hunter v. Comm'r Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015) (finding that, to the extent the ALJ erred in failing to state with particularity the weight assigned to two different doctors, the error was harmless because it did not affect the ALJ's ultimate determination).

The same logic applies here. Although the ALJ did not specify the weight given to Dr. Campbell's opinion concerning Plaintiff's inability to ambulate, the ALJ provided in-depth analysis of *other* evidence on that same point. Specifically, the ALJ evaluated Dr. Noble's opinion concerning Plaintiff's alleged medical need for an adjustable cane to ambulate, as well as Plaintiff's own testimony regarding her inability to walk (R. 21-23). The ALJ rejected this evidence in favor of other evidence that tended show a far greater ability to ambulate, including the evidence noted in section III.A.1 (R. 21-23).

As in *Colon*, the ALJ did not leave the reviewing court "pondering" as to why the RFC failed to reflect Dr. Campbell's view of Plaintiff's inability to ambulate. Rather, the ALJ wrote a lengthy decision finding it unnecessary to incorporate any limitation into the RFC to account for the need for a cane or an inability to ambulate. As previously stated, the Court finds the ALJ's conclusion in this regard to be supported by substantial evidence. In light of this, the Court finds any error committed by the ALJ with respect to Dr. Campbell's opinion to be harmless. *See Miller v. Barnhart*, 182 F. App'x 959, 960 (11th Cir. 2006) (noting that "an incorrect application of the regulations results in harmless error" when "the correct application would not contradict the ALJ's ultimate findings").

### 3. Severity of Impairments

Plaintiff next assigns error to the ALJ's assessment of the severity level of certain impairments. Specifically, at step two of the sequential evaluation, the ALJ found that Plaintiff

9

suffered from "non-severe" impairments of, inter alia, rheumatoid arthritis, endocrine disorders, lumbar radiculopathy, and adjustment disorder with depressed mood (R. 18). Plaintiff argues the ALJ committed error by failing to deem each of these impairments to be "severe" (DE 20 at 13). Alternatively, Plaintiff argues the ALJ committed error by failing to incorporate these non-severe impairments into the RFC (DE 20 at 13). As set forth below, the Court disagrees.

At the outset, to the extent Plaintiff assigns error to the ALJ's failure to deem any particular impairment to be "severe," such error would be harmless. As the Eleventh Circuit has explained, step two acts as a threshold inquiry, designed to screen-out applicants whose impairments do not support *any* claim for relief. *Stratton v. Bowen*, 827 F.2d 1447, 1452 (11th Cir.1987). As such, the finding of *any* severe impairment is enough to satisfy step two. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

Here, the ALJ found numerous severe impairments at step two (R. 17). Having found these severe impairments, the ALJ proceeded to the next step in the sequential analysis, thereby mooting any issue concerning *other* impairments that might have been deemed "severe." Accordingly, to the extent Plaintiff assigns error to the ALJ's step two analysis in this case, the Court finds such error to be harmless.

As to the ALJ's alleged error in failing to incorporate non-severe impairments into the RFC, the Court likewise finds no error. In making the RFC determination, the ALJ must consider all of the record evidence, including evidence of both severe and non-severe impairments. *Hanna v. Astrue*, 395 F. App'x 634, 635 (11th Cir. 2010). The ALJ has no obligation, of course, to include limitations in the RFC that the ALJ properly finds to be unsupported by the evidence. *Crawford*

*v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Plaintiff points to multiple non-severe impairments here, which the Court will address in turn.

### i. Rheumatoid Arthritis, Endocrine Disorders, Lumbar Radiculopathy

Plaintiff first argues that the ALJ erred by failing to incorporate limitations into the RFC to account for her non-severe impairments of rheumatoid arthritis, endocrine disorders, and lumbar radiculopathy (DE 20 at 14-16). The Court finds no error on this front as the record contained substantial evidence that supported the ALJ's decision to omit any such limitations, including the following:

- In February 2021, consultative examiner Dr. Daria determined that Plaintiff could perform fine and gross manipulation functions on a sustained basis (R. 465-69, 629). He noted that Plaintiff had 5/5 grip strength and could open a jar, turn a doorknob, and pick up coins, despite swelling in both of Plaintiff's hands (R. 468).

- Dr. Daria also noted that Plaintiff had "normal upper and lower extremities," that she could squat and rise from a chair using a table as support, that she could walk on her heels or toes, and that she needed no help to change into a medical garment for the exam (R. 468). He further noted that while Plaintiff did not do her own shopping, laundry, or gardening, she did cook for herself (R. 465).

- In July 2021, Dr. Noble examined Plaintiff following her hip replacement surgery and reported that Plaintiff was "overall doing well" (R. 305). Dr. Noble also reported that Plaintiff "ambulates with a normal stride" and that she used a cane only for "balance" (R. 305). He also prescribed Plaintiff a three-month supply of diclofenac to use on an as-needed basis as Plaintiff was planning to travel out of the country due to upcoming trip to Albania (R. 307).

11

- On July 29, 2021, state agency consultant Dr. Burns opined that Plaintiff could perform medium work, and could frequently climb stairs/ladders, and that she ambulated with normal stride despite her rheumatoid arthritis, endocrine disorders, and other conditions (R. 84-87, 92-95).

- As to Plaintiff's growth hormone associated pituitary adenoma with acromegaly and secondary hyperparathyroidism, the ALJ noted these conditions had been treated, respectively, with medications and surgery, specifically, transsphenoidal adenomectomy in September 2020 and total thyroidectomy in November 2020 (R. 18, 334, 368, 389, 450, 466, 477-80).

- As to osteoporosis and rheumatoid arthritis, the ALJ noted these conditions had been largely controlled with medication (R. 18, 333-34).

- The ALJ noted that Plaintiff testified about taking an overseas trip to Albania for three months in July 2021 which, in the ALJ's view, involved "much more intact ability to sit, stand, and walk at one time than indicated by [Plaintiff's] hearing testimony" (R. 22, 51).

The Court finds this evidence to be "substantial" within the meaning of the standard of review that applies here. Plaintiff again points the Court to a variety of record evidence the ALJ might have used to reach different conclusions regarding appropriate parameters for the RFC. On review, however, the role of this Court is not to reweigh conflicting evidence or substitute its judgment for that of the ALJ. *Mitchell*, 771 F.3d at 782. The mere fact that some of the evidence conflicted with the ALJ's conclusion does not serve as a basis for remand. *Moore*, 405 F.3d at

1213. The Court finds no error in the ALJ's failure to incorporate RFC limitations related to rheumatoid arthritis, endocrine disorders, or lumbar radiculopathy.[3]

### ii. Mental Impairments

Plaintiff next challenges the ALJ's decision to omit any RFC limitations related to mental impairments (DE 20 at 16-17).  Plaintiff points out that, at step two of the sequential evaluation, the ALJ found that Plaintiff had "mild" limitations in two of the four broad areas of mental functioning.  Plaintiff seems to argue this step two finding obligated the ALJ to either (a) include mental impairments in the RFC, or (b) explain in writing why the ALJ chose not to do so.  As set forth below, the Court disagrees.

To begin, Plaintiff's argument confuses the inquiries made at steps two and four of the sequential evaluation.  Where a claimant has a "colorable claim of mental impairment," the ALJ must complete the Psychiatric Review Technique Form, often referred to as the "PRTF" or the "special technique." *Moore*, 405 F.3d at 1214. In completing the PRTF, the ALJ must evaluate how a claimant's mental impairment impacts four broad functional areas (sometimes referred to as the "paragraph B criteria"):  (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; (4) and the ability to adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).  The ALJ must rate the degree of limitation in each of these areas as either "none," "mild," "moderate," "marked," or "extreme."  20 C.F.R. § 404.1520a(c)(4).  If the ALJ finds the degree of limitation in each of these functional areas to be "none" or "mild," the ALJ will generally find the mental impairment to be non-severe

---

[3] As to lumbar radiculopathy, the ALJ noted that, as of the time of the hearing, Plaintiff had not yet established this condition "across a 12-month period, the relevant time period of establishing a disability under the Social Security Act…." (R. 22).

because it causes no more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

The ALJ uses the PRFT and the paragraph B criteria to rate the severity of mental impairments at step two of the sequential process. *See* 20 C.F.R. § 404.1520a. These factors do not necessarily dictate the outcome of the RFC, however, as the RFC determination "requires a more detailed assessment." *Schink*, 935 F.3d at 1269. ALJs are not obligated to include mental limitations in the RFC merely because they have found "mild" limitations under the PRFT or paragraph B criteria. *See Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) (collecting cases); *Mendez v. Saul*, No. 7:19-CV-291, 2021 WL 1217376, at *11 (S.D. Tex. Jan. 6, 2021) (noting that paragraph B findings need not be incorporated into the RFC and that claimant's argument to the contrary "misconstrues the relationship between the ALJ's step [two and] three findings and the RFC determination").

In this case, at step two of the sequential process, the ALJ found Plaintiff's mental impairment of major depressive disorder to be "non-severe" (R. 19). In reaching this decision, the ALJ applied the PRFT and found that Plaintiff had "no" limitations in two areas, and "mild" limitations in the other two areas of mental functioning under the paragraph B criteria (R. 18-19). The ALJ's written decision expressly noted, however, that these paragraph B findings did not equate to a mental limitation for purposes of the RFC, stating:

> The limitations identified in the "paragraph B" criteria *are not a [RFC] assessment* but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.

(R. 20) (emphasis added). The ALJ thereafter incorporated no limitations into the RFC to account for Plaintiff's non-severe mental impairments (R. 20).

The Court finds no error in the ALJ's decision. As stated, the ALJ's paragraph B findings at step two did not mandate that she incorporate mental limitations into the RFC. *See*, *e.g.*, *Chestang*, 2022 WL 4354849 at *8. Moreover, the Court has reviewed the record and finds substantial support for the ALJ's decision to omit mental limitations from the RFC, including the following:

- In January 2021, consultative psychological evaluator Dr. Eugene Herrmann, opined that Plaintiff did not present with symptoms of a serious mental health illness that would prevent her from maintaining employment (R. 19, 460).

- Dr. Hermann also opined that Plaintiff's thought process was "logical and goal directed without loosening of associations," that her immediate memory was intact, and that her remote memory was average (R. 458-59).

- Consistent with Dr. Hermann's view, state agency psychological consultants Byron T. Pack, Psy.D., and Richard Willens, Psy.D. likewise found the same paragraph B criteria ratings as the ALJ (R. 19, 69-70, 83-84, 91-92).

- At the hearing, Plaintiff herself testified that she could not work primarily due to chronic pain and physical limitations (R. 19, 40-42). The record showed no evidence that she had ever sought or received mental health treatment (R. 20).

The Court finds the above evidence to be "substantial" within the meaning of the standard of review that applies to this case. *See Foote*, 67 F.3d at 1560 (defining substantial evidence). To the extent Plaintiff argues that the ALJ had an obligation to discuss, in the RFC portion of her written decision, why she chose to omit mental limitations from the RFC, the Court rejects that argument. The ALJ discussed mental limitations extensively in the step two portion of her decision, and the ALJ had no obligation to re-discuss those issues several pages later in the RFC

portion of the same decision. *See Thomas v. Comm'r of Soc. Sec.*, No. 8:15-1883, 2017 WL 410263, at *5 (M.D. Fla. Jan. 31, 2017) (noting that the ALJ is "not required to specifically refer to every piece of evidence in his assessment and decision concerning Plaintiff's RFC, so long as his decision reflects that he considered Plaintiff's medical condition as a whole"). The Court finds no error.

### B.     Subjective Complaints

Plaintiff next argues the ALJ erred in evaluating Plaintiff's subjective complaints (DE 20 at 17). The SSA provides that "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…." 42 U.S.C. § 423(d)(5)(A). When a claimant attempts to prove disability based on subjective complaints, the claimant must provide evidence of an underlying medical condition as well as objective medical evidence confirming the severity of the alleged symptoms or evidence establishing that the medical condition could be reasonably expected to give rise to the alleged symptoms. 20 C.F.R. § 404.1529(a), (b).

If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he or she has an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and its effect on the claimant's ability to work. 20 C.F.R. § 404.1529(c), (d). If the ALJ chooses to discount a claimant's allegations of disabling symptoms and limitations, the ALJ "must clearly 'articulate explicit and adequate reasons'" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1561). Courts "will not disturb a clearly articulated [subjective complaint] finding supported by substantial evidence." *Mitchell*, 771 F.3d at 782.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but the ALJ found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms" were not consistent with the medical evidence and other evidence in the record (R. 21). In short, the ALJ did not find Plaintiff to be entirely credible.

The Court has reviewed the record, and finds substantial support for the ALJ's decision, including the following:

- At the hearing, Plaintiff testified she must use an assistive device (a cane) any time she leaves the home (R. 21). Yet substantial evidence, detailed in section III.A.1 above, indicated that Plaintiff did not need a cane to ambulate.

- At the hearing, Plaintiff testified she cannot do any cleaning or cooking due to her pain (R. 21) Yet in February 2021, she reported to Dr. Daria that she was able to do her own cooking (R. 21, 45, 465). Likewise, in mid-April 2021, she reported to Dr. Noble that her pain was under control with appropriate medications such that she had been able to participate in physical therapy (R. 22, 323).

- At the hearing, Plaintiff also testified to engaging in international travel from her current residence near Miami to Albania for a three-month period starting in July 2021, with flights up to twelve hours long (R. 22, 51-52). The ALJ found the demands of international travel to be inconsistent with Plaintiff's hearing testimony regarding her physical limitations, calling into question her credibility (R. 22).

- At the hearing, Plaintiff also testified that she originally stopped working due to her growth hormone associated pituitary adenoma with acromegaly (R. 21, 39-40). Yet the record showed this to be a non-severe impairment, largely remediated by way

    of surgery and medications (R. 18, 21, 368, 389, 420, 443-48, 466). In the ALJ's view, this called into question the veracity of Plaintiff's testimony regarding her functional limitations during the early part of the alleged disability timeframe (R. 21).

- At the hearing, Plaintiff testified she cannot work due to pain and disabling symptoms (R. 40-42). Yet state agency medical consultants Dr. Minal Krishnamurthy and Dr. Jolita Burns opined that Plaintiff could perform at least light work (R. 23-24, 71-75, 92-95). Consultative examining physician Dr. Daria also noted that Plaintiff could ambulate independently had "normal upper and lower extremities," that she could squat and rise from a chair using a table as support, that she could walk on her heels or toes, and that she needed no help to change into a medical garment for the exam (R. 468, 630). Dr. Daria additionally found that Plaintiff could perform fine/gross manipulations on a sustained basis, despite her chronic pain related to her hands' swelling (R. 630-31). He also noted Plaintiff's thought process was logical and goal directed, that Plaintiff was able to recall five out of five objects after 20 minutes, perform two-step instructions without difficulty, and appeared able to manage her own finances well (R. 469).

  Plaintiff again points to a variety of record evidence that supports her subjective complaints and which the ALJ might have relied upon to give greater credibility to her testimony. On review, however, this Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ. *Mitchell*, 771 F.3d at 782. This is especially true as to credibility assessments. The ALJ heard Plaintiff's testimony, not this Court. Applying the appropriate standard of review, the Court finds no error.

## IV. CONCLUSION & NOTICE OF RIGHT TO OBJECT

For the reasons set forth above, the undersigned **RECOMMENDS** as follows:

1. Consistent with the Court's ruling, Plaintiff's Motion for Summary Judgment (DE 20) be **DENIED**, and the Commissioner's Motion for Summary Judgment (DE 23) be **GRANTED**.

2. The Commissioner's final decision be **AFFIRMED.**

3. Final judgment be entered in the Commissioner's favor.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge William Dimitrouleas. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 29th day of December 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE